UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TINA M. GRACE and
LARRY GRACE,

        Plaintiffs,

v.                                    Civil Action No.: 2:15-01505
                                      (Lead action)

C. MICHAEL SPARKS and
MICHAEL THORNSBURY and
JAY LOCKARD, individually and in
their (former) official capacity, and
THE WEST VIRGINIA SUPREME COURT OF APPEALS and
STEVEN D. CANTERBURY, its administrator, and
THE MINGO COUNTY COMMISSION, together with its
present (and former) commissioner(s) and
in their (his) official capacity, and
GREG SMITH and JOHN MARK HUBBARD and
DIANE HANNAH and DAVID L. BAISDEN and
MINGO COUNTY BOARD OF EDUCATION,

        Defendants.


TINA M. GRACE and
LARRY GRACE,

        Plaintiffs,

v.                                    Civil Action No.: 2:15-00281

C. MICHAEL SPARKS and
MICHAEL THORNSBURY and
JAY LOCKARD, individually and in
their (former) official capacity, and
THE WEST VIRGINIA SUPREME COURT OF APPEALS and
STEVEN D. CANTERBURY, its administrator, and
THE MINGO COUNTY COMMISSION and
MINGO COUNTY COMMISSIONERS,
in their official capacity,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are separate motions to dismiss filed by defendant Michael Thornsbury on March 30, 2015, by defendant C. Michael Sparks on April 6, 2015, and jointly by defendants Steven D. Canterbury and the West Virginia Supreme Court of Appeals on April 9, 2015.[1]

I.   Allegations of the Consolidated Complaints

Plaintiffs Tina M. Grace and Larry Grace, residents of Mingo County, West Virginia, are husband and wife.  Mr. and Mrs. Grace instituted the first of these actions on January 7, 2015. On February 5, 2015, they filed a new complaint asserting essentially the same claims, but adding as a defendant the Mingo County Board of Education.  The latter complaint's only new allegations were stated in two causes of action against the Board of Education.  For reasons stated in its memorandum

---

[1] Defendants Sparks and Canterbury also moved to dismiss in Civil Action No. 2:15-00281, which the plaintiffs filed a month before filing Civil Action No. 2:15-01505.  As the court consolidated the two actions by its order of October 6, 2015 and the parties' motions to dismiss present essentially the same arguments, the court ORDERS that the motions to dismiss filed in the former action, found at docket entry 76 and 77 of the consolidated docket be, and hereby are, denied as moot.

opinion and order of October 6, 2015, the court consolidated the actions at the plaintiffs' request.  The allegations of the plaintiffs that follow are taken as true for purposes of the motions to dismiss.

At all relevant times, defendant C. Michael Sparks was serving as the prosecuting attorney for Mingo County, defendant Michael Thornsbury was serving as a judge on the Circuit Court of Mingo County and defendant Jay Lockard was serving as foreperson of the Mingo County grand jury and employed by Mingo County as a computer technician.  Plaintiffs allege that unlawful actions by defendants Sparks, Thornsbury and Lockard occurred while they were acting in their official capacities.

Defendant Steven D. Canterbury is the operations director of the Supreme Court of Appeals of West Virginia.  The Supreme Court of Appeals is included as a defendant based on the allegation that Mr. Thornsbury "may be construed [as its] employee."  Pls.' Compl. ¶ 59.  The Mingo County Commission is the municipal seat of government for Mingo County, West Virginia.  Defendants Greg Smith, John Mark Hubbard, Diane Hannah and David L. Baisden have each served as commissioners on the three-member Mingo County Commission.  The Mingo County

3

Commission and its commissioners are named because Mr. Sparks
and Mr. Lockard "may have been acting as employees" of the
commission while engaged in wrongful conduct toward plaintiffs.
Id. ¶ 60.  The Mingo County Board of Education is responsible
for public education in the county.

On September 23, 2011, a physical therapist at
Riverside Elementary in Mingo County reported allegations of
child abuse by plaintiff Tina Grace, who was a teacher at that
same school.  Id. ¶ 8.  A meeting held that day to discuss the
allegations was attended by the superintendent of Mingo County
Schools and an unnamed Mingo County prosecutor.  Id. ¶ 8, 10.
The superintendent reported the alleged abuse to the West
Virginia Department of Health and Human Resources ("DHHR"), as
required by law, and DHHR conducted an investigation.  Id. ¶¶
11-12.  The superintendent suspended Tina Grace with pay on
September 26, 2011.  Id. ¶ 13.

DHHR reported the findings of its investigation into
allegations of child abuse by Tina Grace on December 5, 2011.
Id. ¶ 14.  The DHHR Report "found Tina Grace had committed child
abuse," though the report did not contain "specific findings of
abuse or refe[r] to any law, rule or regulation governing the

4

same." <u>Id.</u> ¶ 28.  The Mingo County School Board terminated Mrs. Grace from her position teaching special education on December 21, 2011, based on the findings by DHHR.  <u>Id.</u> ¶ 29.

The only teacher to provide negative information about Mrs. Grace to DHHR investigators was Jennifer Sparks, another special education teacher and the wife of defendant C. Michael Sparks.  <u>Id.</u> ¶ 17.  Mrs. Sparks made statements regarding past incidents involving Mrs. Grace, and the two had "engaged in several verbal disagreements in recent years."  <u>Id.</u> ¶ 16, 21. Those incidents are alleged to have involved "a balancing device known as the 'turtle' and the use of hot sauce for disciplining an unruly child."  <u>Id.</u> ¶ 17.  The complaint does not further discuss the substance of the abuse allegations against Mrs. Grace.

Mrs. Sparks wanted to remain at Riverside Elementary, where her children attended school, but a pending consolidation of schools would result in her transfer elsewhere.  <u>Id.</u> ¶¶ 19-20.  Because Mrs. Grace had greater seniority, she would have remained at Riverside.  <u>Id.</u>  As a result, Mrs. Sparks had an incentive to see Mrs. Grace lose her teaching position in order to stay at Riverside.  <u>Id.</u> ¶ 22.  Prior to this incident, Mrs.

Grace had a distinguished teaching career spanning fifteen years teaching in Mingo County.  Id. ¶ 30.

In addition to Mrs. Sparks, two teachers' aides provided negative information to DHHR regarding Mrs. Grace.  Id. ¶ 24.  Plaintiffs allege that both of these aides have personal or familial connections to the Sparks family and impliedly shared the motivation to see Mrs. Grace removed from her teaching position.  Id. ¶ 25-27.

The DHHR report also quoted defendant Sparks stating he would "definitely try to prosecute her (Tina Grace) due to her actions regarding special needs students."  Id. ¶ 15. During the April 2012 term of the Mingo County Grand Jury, Mrs. Grace was indicted on a single count of battery and two felony counts of child abuse.  Id. ¶ 35.  These indictments were based solely on the DHHR report.  Id. ¶ 36.  Defendant Sparks presented the matters for indictment and initialed the indictments, which were signed by the grand jury foreman, defendant Lockard.  Id. ¶ 37, 42.  The battery charge related to an alleged slap of a student's bare buttocks, and the two felonies related to Mrs. Grace allegedly forcing a student to

6

use a balancing device for excessive time periods.[2]  Id. ¶ 38.

Plaintiffs allege that defendant Lockard was improperly seated on the grand jury because he was simultaneously employed by the county.  Id. ¶ 43.  Additionally, plaintiffs allege that defendants Sparks, Lockard, Thornsbury, and Baisden (a member of the Mingo County Commission) met secretly before the grand jury considered the indictments to discuss Mrs. Grace.  Id. ¶ 45.  Defendant Sparks is also alleged to have made improper statements regarding the charges to the news media and to have attempted to conceal his conflict of interest by choosing not to list his wife as a witness.  Id. ¶ 49-50.

Mrs. Grace pled not guilty to all three charges.  Id. ¶ 48.  On November 28, 2012, Mrs. Grace and her counsel executed a Pretrial Disposition Agreement with defendant Sparks providing that the charges would be dismissed in exchange for Mrs. Grace dropping the appeal of her termination by the Mingo County

---

[2] Plaintiffs repeatedly allege that incidents involving alleged abuse had been investigated previously without adverse findings and that no report of Mrs. Grace's alleged abuse was made within the 48 hour period required by law.  At this stage, the court accepts these facts as true, but notes that the complaint stops short of alleging that the events underlying the complaints of child abuse did not occur.

School Board.  Id. ¶ 51.  On January 10, 2013, defendant Thornsbury entered an order ratifying this agreement and directing Mrs. Grace to comply with its terms.  Id. ¶ 52.  On April 23, 2013, defendant Thornsbury entered an order expunging the charges against Mrs. Grace.  Id. ¶ 53.

The plaintiffs' complaints contain fifteen counts. Several counts jointly name defendants Sparks, Thornsbury, and Lockard, alleging injuries based on the prosecution of Mrs. Grace.  Count One alleges that these defendants deprived Mrs. Grace of her civil rights under color of state law, in violation of 42 U.S.C. § 1983, "by exposing her to malicious prosecution as well as causing her to be deprived of her teaching profession, and livelihood as well [as] her physical and mental well being . . . ."  Id. ¶ 62.

Count Two alleges that defendant Sparks conspired with defendants Thornsbury and Lockard to maliciously prosecute Mrs. Grace in order to benefit Mrs. Sparks's career.  Id. ¶ 68. Count Three alleges that defendant Sparks was grossly negligent in prosecuting Mrs. Grace despite his conflict of interest in the matter.  Id. ¶ 75-79.  Count Four contends that defendant Thornsbury was grossly negligent in allowing an unlawful grand

8

jury appointment and attending a meeting with the grand jury foreman and prosecutor prior to Mrs. Grace's indictment.  Id. ¶ 80-84.  Count Five asserts a negligence claim against defendant Lockard for his allegedly unlawful presence on the grand jury and his participation in the meeting with defendants Thornsbury, Sparks, and Baisden.  Id. ¶ 85-88.

Counts Six through Ten rely on the same facts and each assert additional claims against defendants Sparks, Thornsbury, and Lockard.  Count Six alleges grossly negligent infliction of emotional distress.  Id. ¶ 91.  Count Seven alleges intentional infliction of emotional distress.  Id. ¶ 93-94.  Count Eight alleges false arrest.  Id. ¶ 96-97.  Count Nine alleges malicious prosecution.  Id. ¶ 99-100.  Count Ten alleges abuse of process.  Id. ¶ 102-103.

Count Eleven is directed against the West Virginia Supreme Court of Appeals and Administrator Canterbury. Plaintiffs allege that as defendant Thornsbury's employer or supervisor, these defendants are liable for his conduct. Plaintiffs also argue that the court and its administrator were negligent in failing to supervise defendant Thornsbury.  Id. ¶ 105-108.  Count Twelve is a negligence claim against the Mingo

9

County Commission and its commissioners, arguing that the commission negligently supervised defendant Lockard.  Id. ¶ 110-111.

In Count Thirteen, plaintiffs claim that the Mingo County Board of Education breached its employment contract with Mrs. Grace when it terminated her.  Plaintiffs allege that Mrs. Grace never received written notice of her termination or an opportunity to respond to the grounds upon which it was based. Id. ¶ 120.  Count Fourteen relies upon the same facts involving the Board of Education, alleging a due process and equal protection violation under 42 U.S.C. § 1983.

The final count, Count Fifteen, does not identify specific defendants and generally claims that the events described "had an adverse impact on the plaintiffs' marital life" resulting in a loss of consortium.  Id. ¶ 127-128.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff's complaint to contain "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007).  Rule

12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). The showing of an "entitlement to relief" must amount to "more than labels and conclusions . . . ."  Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do."  Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an

element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d
342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289
F.3d 270, 281 (4th Cir. 2002)). "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, [will] not suffice"; however, a complaint "does not
require 'detailed factual allegations.'" Ashcroft v. Iqbal, 556
U.S. 662, 678(2009). Instead, it need only contain "[f]actual
allegations . . . [sufficient] to raise a right to relief above
the speculative level." Twombly, 550 U.S. at 555; Iqbal, 556
U.S. at 678 (2009) (a complaint "demands more than an unadorned,
the-defendant-unlawfully-harmed-me accusation."). Stated
succinctly, the complaint must allege "enough facts to state a
claim to relief that is plausible on its face." Twombly, 550 at
569; Giarratano, 521 F.3d at 302.

When evaluating a motion to dismiss, a district court
is required to "'accept as true all of the factual allegations
contained in the complaint . . . .'" Erickson, 551 U.S. at 94
(quoting Twombly, 550 U.S. at 555-556); see also South Carolina
Dept. Of Health and Environmental Control v. Commerce and
Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting
Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). Factual
allegations are to be distinguished from legal conclusions,

which the court need not accept as true.  Iqbal, 556 U.S. at 678
("the tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions").  The court must also "draw[] all reasonable . . .
inferences from th[e] facts in the plaintiff's favor . . . ."
Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).


III. Discussion

A.      Defendants Canterbury and the Supreme Court of Appeals

        Plaintiffs' only claim naming defendants Canterbury
and the Supreme Court of Appeals is stated in Count Eleven,
alleging negligence in the supervision of defendant Thornsbury.
Pls.' Compl. ¶¶ 104-108.  Administrator Canterbury and the
Supreme Court of Appeals jointly move to dismiss, arguing that
the plaintiffs' claim against them is barred by the Eleventh
Amendment of the United States Constitution.  The defendants
also argue that the plaintiffs inappropriately rely on
respondeat superior or supervisory liability and fail to state a
claim against them under federal or state law.

        Plaintiffs repeatedly misstate the law of sovereign

13

immunity in an attempt to defeat what is otherwise a
straightforward argument for these defendants' immunity from
suit.  In response to their motion to dismiss, plaintiffs argue
that Eleventh Amendment immunity "does not extend to one [who]
is seeking to vindicate his or her federal rights."  Pls.' Resp.
Re Canterbury 2 (citing Pinehurst State School & Hospital v.
Halderman, 465 U.S. 89 (1984)).  Plaintiffs also cite Ashcroft
v. Iqbal, 556 U.S. 662 (2008), for the proposition that
sovereign immunity does not apply where a defendant's
"supervisory failures," rather than respondeat superior, provide
the basis for a claim.  Id. 2-3.  Neither of these propositions
is a correct statement of the law.

The Eleventh Amendment states, "The Judicial power of
the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State."  This immunity protects
unwilling states from damage suits in federal court, along with
their agents and instrumentalities.  See Regents of the Univ. of
Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Michigan Dep't of
State Police, 491 U.S. 58, 70-71; Edelman v. Jordan, 415 U.S.
651, 662-63 (1974); Bland v. Roberts, 730 F.3d 368, 389-90 (4th

14

Cir. 2013).

        The cases plaintiffs rely upon undercut their own
argument to defeat defendants' immunity.  In <u>Pennhurst</u>, the
Supreme Court affirmed that "[t]he Eleventh Amendment bars a
suit against state officials when 'the state is the real,
substantial party in interest.'"  465 U.S. 89, 101 (quoting <u>Ford</u>
<u>Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464 (1945)).
In <u>Iqbal</u>, the Supreme Court rejected the plaintiffs' proposed
distinction between <u>respondeat superior</u> and primary "supervisory
liability."  556 U.S. at 677 ("In a § 1983 suit or a *Bivens*
action—where masters do not answer for the torts of their
servants—the term 'supervisory liability' is a misnomer").

        The Supreme Court of Appeals is inarguably a state
entity.  Defendant Canterbury is sued only in his official
capacity as operations director of the court, and the official
capacity claim is, "'in effect, . . . against the governmental
entity employing'" him.  <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249
(4th Cir. 2006) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 166
(1985)). The state of West Virginia is the real, substantial
party in interest in plaintiffs' claim against these defendants.
As a result, the Eleventh Amendment bars the claim.  It is,

15

accordingly, ORDERED that Administrator Canterbury and the
Supreme Court of Appeals' combined motion to dismiss be, and it
hereby is, granted.


    B.    Defendant Sparks


        In his motion to dismiss the claims against him,
defendant Sparks argues (1) each of the claims is time barred by
the applicable statute of limitations and (2) the doctrine of
absolute immunity shields him from suit based on actions taken
while he served as a state prosecutor.  Plaintiffs contend
neither the limitations periods nor prosecutorial immunity
should defeat their claims.  In particular, the plaintiffs'
response suggests that the discovery rule should toll the
applicable limitations period because Mrs. Grace "did not learn
of the unlawful conduct affecting her matter" until after
defendants Sparks and Thornsbury were charged and convicted of
unrelated misconduct in late 2013.  Pls.' Resp. Re Sparks 8.
Additionally, plaintiffs argue that defendant Sparks's actions
were outside the scope of his official duties and thus should
not be protected by prosecutorial immunity.  Id. 5-7.

16

1.    Statute of Limitations Defense

All of the plaintiffs' claims are subject to either a one- or two-year limitations period.  See W. Va. Code § 55-2-12. Count Two (conspiracy to effect malicious prosecution), Count Eight (false arrest), Count Nine (malicious prosecution) and Count Ten (abuse of process) are subject to the one-year period. See Slack v. Kanawha County Hous. and Redevelopment Auth., 188 W. Va. 144, 148 (1992).  The balance of the claims take a two-year limitations period under the statute.

The parties dispute when the last allegedly wrongful act by defendants occurred.  Plaintiffs point to the order expunging Mrs. Grace's criminal record, entered on April 23, 2013.  Defendant Sparks contends that an expungement cannot be construed as part of a criminal conspiracy to harm Mrs. Grace, and, instead, calculates the limitations periods based on the January 10, 2013 order ratifying the agreement to dismiss the charges against her.  Even construing the complaint in favor of the plaintiffs, the court agrees that the expungement hearing cannot reasonably be characterized as part of the tortious conduct alleged.  As a result, the plaintiffs' claims would be timely if brought within one or two years of January 10, 2013,

17

the last date on which the complaint alleges conduct harmful to Mrs. Grace.[3]

As noted above, plaintiffs also argue the discovery rule should toll the statute of limitations for their claims. The same tolling rules apply to both the § 1983 and state tort claims. See Wallace v. Kato, 549 U.S. 384, 394 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations."); Wade v. Danek Medical, Inc., 182 F.3d 281, 289 (4th Cir. 1999) (stating "in any case in which a state statute of limitations applies-- whether because it is 'borrowed' in a federal question action or because it applies under Erie in a diversity action--the state's accompanying rule regarding equitable tolling should also apply.").

In Dunn v. Rockwell, the Supreme Court of Appeals

---

[3] Plaintiffs repeatedly suggest that defendants' alleged torts are continuing because Mrs. Grace is still affected by the loss of her employment and is reasserting the challenge to her termination. See Pls.' Compl. ¶¶ 97, 100, 103. The court finds the continuing tort doctrine inapplicable to the facts alleged. While plaintiffs allege continuing injury, "a wrongful act with consequential continuing damages is not a continuing tort." Ricottilli v. Summersville Memorial Hosp., 188 W. Va. 674, 677 (1992) ("[T]he concept of a continuing tort requires a showing of repetitious, wrongful conduct.")

discussed proper application of the discovery rule to West
Virginia's statute of limitations:

> In tort actions . . . the statute of limitations
> begins to run when the plaintiff knows, or by the
> exercise of reasonable diligence, should know (1) that
> the plaintiff has been injured, (2) the identity of
> the entity who owed the plaintiff a duty to act with
> due care, and who may have engaged in conduct that
> breached that duty, and (3) that the conduct of that
> entity has a causal relation to the injury.

225 W. Va. 43, 52-53 (2009) (quoting Syllabus Point 4, Gaither
v. City Hosp., Inc., 199 W. Va. 706 (1997)).  The court also
held that "whether a plaintiff 'knows of' or 'discovered' a
cause of action is an objective test."  Id. at 53.  Application
of the discovery rule generally requires resolution of factual
questions by the trier of fact.  Id.[4]

      Plaintiffs state "[t]he timing for the discovery and
concealment of these matters remains unknown.  However, it
occurred well after the January 2013 time period Mr. Sparks
claims should bar these various causes of action the plaintiffs

---

[4] Defendant Sparks argues that the discovery rule only tolls a
statute of limitations where plaintiffs have shown a defendant's
actions "prevented them from knowing of the wrong at the time."
Sparks Reply 5-6.  The case defendant Sparks relies upon for
this rule, Cart v. Marcum, 188 W. Va. 241 (1992), was expressly
overruled by the Supreme Court of Appeals in Dunn.  See 225 W.
Va. at 50-53.  As the law currently stands, action on the part
of the defendant to conceal a cause of action is not required
for the discovery rule to apply.

filed in February of this year." Pls.' Resp. Re Sparks 9. In particular, plaintiffs suggest that unrelated criminal charges against defendants Sparks and Thornsbury in late 2013 resulted in the discovery of facts relevant to their claims.

Even if the plaintiffs' claims were tolled until late 2013, when the plaintiffs learned of the criminal proceedings against Sparks and Thornsbury, this extension would not save claims governed by a one-year statute of limitations. Apart from their vague averment that the timing of discovery "remains unknown," plaintiffs have not identified facts which would toll the statute of limitations long enough to save those claims. Because their complaint was filed in 2015, the claims subject to a one-year statute of limitations in Counts Two, Eight, Nine and Ten appear to be untimely. However, as noted in Dunn, determination of when a plaintiff "knows, or by the exercise of reasonable diligence, should know" the facts necessary for a claim to accrue is generally a factual inquiry. Accordingly, this issue is not amenable to disposition at this time.

The remaining claims, first asserted against defendant Sparks in the plaintiffs' complaint of January 7, 2015, were timely filed. Defendant Sparks acknowledges that such claims

20

had to be brought by January 10, 2015, but looks to the February 5, 2015 filing date of the later-filed complaint in this consolidated action to argue the claims should be barred. Because all claims asserted against defendant Sparks were present in the earlier complaint, the claims governed by a two-year limitations period were timely filed prior to the applicable deadline.[5]

### 2.   Prosecutorial Immunity Defense

Defendant Sparks also argues that he is entitled to absolute prosecutorial immunity from plaintiffs' claims.  State prosecutors enjoy absolute immunity from suit both under the common law and with respect to claims brought under § 1983. Imbler v. Pachtman, 424 U.S. 409, 424-27 (1976).  Although the scope of absolute prosecutorial immunity is vast, it is not unlimited.  Absolute immunity extends "only to those functions which are 'intimately associated with the judicial phase of the criminal process.'"  Allen v. Lowder, 875 F.2d 82, 85 (4th Cir. 1989) (quoting Imbler, 424 U.S. at 430).  The prosecutor bears

---

[5] The only claims added in the February 5 complaint, and potentially barred by a two-year limitations, were asserted against the Mingo County Board of Education.

the burden of establishing that absolute immunity is applicable. <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991).

      Courts apply a functional test to evaluate a prosecutor's claim to absolute immunity.  Prosecutorial conduct, including activity outside the courtroom, is entitled to absolute immunity if it is "fairly within [a prosecutor's] function as an advocate."  <u>Imbler</u>, 424 U.S. at 430, n. 32.  On the other hand, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." <u>Buckly v. Fitzsimmons</u>, 509 U.S. 259 (1993) (citing <u>Burns v. Reed</u>, 500 U.S. 478, 494 (1991)).

      The line between "advocacy" and "administrative duties and . . . investigatory functions" is not always a sharp one. The court is guided by the contexts in which absolute immunity has previously been extended.  In addition to statements made in open court, absolute immunity extends to tasks such as presenting a case to a grand jury for indictment, <u>Malley v. Briggs</u>, 475 U.S. 335, 343 (1986), engaging in plea negotiations, <u>Taylor v. Kavanagh</u>, 640 F.2d 450, 453 (2d Cir. 1981), and

preparing evidence for presentation at a trial or other hearing, Buckley, 508 U.S. at 273.  By contrast, absolute immunity does not protect activities such as holding a press conference, Buckley, 509 U.S. at 277-278, engaging in investigative activity before probable cause has been established, id., or providing legal advice to police investigating a crime, Burns, 500 U.S. at 492-96.[6]

The Supreme Court has also recognized that certain administrative activities in a prosecutor's office are themselves intimately related with the judicial process, giving rise to absolute immunity.  In Van de Kamp v. Goldstein, the court extended immunity to claims that supervising prosecutors failed to properly train and supervise trial prosecutors, noting that "the ease with which a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint charging a failure of training or supervision would eviscerate Imbler." 555 U.S. 335, 347 (2009).  Prosecutorial immunity would be rendered meaningless if a plaintiff's artful pleading were allowed to circumvent a prosecutor's protection from suit.

---

[6] In many cases the latter activities, while not shielded by absolute immunity, would still give rise to qualified immunity. The issue of qualified immunity has not been raised by defendant Sparks.

Here, the gravamen of the plaintiffs' complaint clearly relates to actions defendant Sparks took as an advocate of the state.  All of defendant Sparks's statements before the grand jury and at the Pretrial Disposition Hearing are entitled to absolute immunity.  Likewise, defendant Sparks's decision not to seek further investigation from the police after the DHHR report was issued and his pretrial negotiations with Mrs. Grace are protected activities related to the prosecution of the case against her.

Plaintiffs complain of additional actions taken by defendant Sparks, but none of these actions support a claim independent of defendant Sparks's protected prosecutorial conduct.  Plaintiffs allege that defendant Sparks "participated" in the DHHR investigation, but the complaint is devoid of facts suggesting this apart from defendant Sparks's statement that he would "definitely try to prosecute her (Tina Grace) due to her actions regarding special needs students."  <u>Pls.' Compl.</u> ¶ 15. A statement of intent to prosecute cannot fairly be characterized as investigatory.  While defendant Sparks is not entitled to absolute immunity for his alleged "inflammatory statements" to the press, the complaint does not allege

24

sufficient facts to support a claim based on those statements.
See Pls.' Compl. ¶ 49.

        Finally, plaintiffs allege that defendant Sparks met
with defendants Thornsbury, Baisden and Lockard prior to the
presentation of Mrs. Grace's case to the grand jury.  Pls.'
Compl. ¶¶ 45-46.  The court finds that defendant Sparks's
alleged participation in this meeting would be protected by
absolute immunity.

        First, the alleged meeting between defendants related
to the preparation of the indictment against Mrs. Grace.  Even
if plaintiffs are correct that such a meeting was improper, it
was still undisputedly related to the judicial process.
Notably, plaintiffs repeatedly state that the only evidence upon
which Mrs. Grace was indicted was the DHHR report; there is no
suggestion that this pre-indictment meeting resulted in the
creation or presentation of false testimony to the grand jury.
The courts have long acknowledged that preserving prosecutorial
immunity involves a choice between subjecting innocent
prosecutors to suit and shielding some misconduct from review:

            As is so often the case, the answer must be found
        in a balance between the evils inevitable in either
        alternative. In this instance it has been thought in
        the end better to leave unredressed the wrongs done by

25

dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949) (L. Hand, J.).  The question before the court is whether defendant Sparks's alleged meeting with defendants Thornsbury and Lockard falls within the protected sphere of a prosecutor's advocacy for the state.  Finding it does, the court does not have occasion to analyze the alleged illegality of that meeting, discussed at length by plaintiffs.

Defendant Sparks was acting within his role as an advocate for the state when he appeared before the grand jury to present Mrs. Grace's indictment, when he negotiated a Pretrial Disposition Agreement to dispose of the claims against her, and to the extent the pre-indictment meeting alleged by plaintiffs occurred.  As discussed above, none of the other actions allegedly taken by defendant Sparks would give rise to actionable claims.  Accordingly, the claims brought against him are foreclosed by absolute immunity.  The court ORDERS that the claims against defendant Sparks be, and they hereby are, dismissed.

26

C.     Defendant Thornsbury

Defendant Thornsbury moves to dismiss the claims against him based on the applicable statute of limitations, his absolute immunity from suit as a judicial officer, and the plaintiffs' failure to state a claim against him.  For the reasons stated above, the court cannot conclude that any of the plaintiffs' claims are barred by the statute of limitations at this juncture.  See supra pp. 16-21.  However, the court concludes that as a judicial officer defendant Thornsbury is entitled to absolute immunity from the plaintiffs' claims.

The judge's absolute immunity for official acts taken within his jurisdiction is beyond question.  A judge is subject to civil suit based on his conduct only where he acts "in the 'clear absence of all jurisdiction.'"  Stump v. Sparkman, 435 U.S. 349, 357 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)).  For purposes of this analysis, "the scope of the judge's jurisdiction must be construed broadly."  Stump, 435 U.S. at 356.  Like a prosecutor, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."  Id.

The plaintiffs identify the following actions taken by defendant Thornsbury as the basis for their claims: (1) meeting with defendants Sparks, Baisden and Lockard to discuss Mrs. Grace at some point prior to the grand jury indictment, (2) allowing an improper grand juror to be seated, (3) ratifying the Pretrial Disposition Agreement made between Mrs. Grace, represented by her counsel, and defendant Sparks, and (4) entering an expungement order. None of these actions were clearly beyond defendant Thornsbury's jurisdiction as a circuit judge in Mingo County at the time.

Plaintiffs repeatedly assert that defendant Thornsbury's conduct was "decidedly unlawful," "surreptitious," and "improper." Pls.' Resp. Re Thornsbury 4-5. While the court accepts the allegations in the complaint as true and makes all favorable inferences in favor of the plaintiffs for purposes of the motions to dismiss, it need not credit plaintiffs' legal conclusions. Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) . . ."). The facts alleged simply do not suggest any action taken by defendant Thornsbury in "the clear absence of all jurisdiction." Accordingly, defendant Thornsbury is

entitled to absolute judicial immunity.  The court ORDERS that
defendant Thornsbury's motion to dismiss be, and it hereby is,
granted.


IV.  Conclusion

        As set forth above, the court has evaluated all the
claims challenged by the defendants' motions to dismiss.  For
the reasons discussed, the court concludes as follows:

        The joint motion to dismiss of defendants Canterbury
and the West Virginia Supreme Court of Appeals is granted and
the court ORDERS the claims against those defendants be, and
they hereby are, dismissed.

        The motion to dismiss of defendant Sparks is granted
and the court ORDERS the claims against him be, and they hereby
are, dismissed.

        The motion to dismiss of defendant Thornsbury is
granted and the court ORDERS the claims against him be, and they
hereby are, dismissed.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

DATED:    November 19, 2015

John T. Copenhaver, Jr.
United States District Judge