UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TINA M. GRACE and
LARRY GRACE,

       Plaintiffs,

v.                            Civil Action No.: 2:15-01505
                            (Lead action)

C. MICHAEL SPARKS and
MICHAEL THORNSBURY and
JAY LOCKARD, individually and in
their (former) official capacity, and
THE WEST VIRGINIA SUPREME COURT OF APPEALS and
STEVEN D. CANTERBURY, its administrator, and
THE MINGO COUNTY COMMISSION, together with its
present (and former) commissioner(s) and
in their (his) official capacity, and
GREG SMITH and JOHN MARK HUBBARD and
DIANE HANNAH and DAVID L. BAISDEN and
MINGO COUNTY BOARD OF EDUCATION,

       Defendants.


TINA M. GRACE and
LARRY GRACE,

       Plaintiffs,

v.                            Civil Action No.: 2:15-00281

C. MICHAEL SPARKS and
MICHAEL THORNSBURY and
JAY LOCKARD, individually and in
their (former) official capacity, and
THE WEST VIRGINIA SUPREME COURT OF APPEALS and
STEVEN D. CANTERBURY, its administrator, and
THE MINGO COUNTY COMMISSION and
MINGO COUNTY COMMISSIONERS,
in their official capacity,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are separate motions for summary judgment filed by defendants Jay Lockard and the Mingo County Board of Education on January 4, 2016.

## I.   <u>Factual and Procedural Background</u>

The plaintiffs' allegations in this consolidated action are set forth in detail in the court's order granting the motions to dismiss of four of the former defendants,[1] entered on November 19, 2015.  (ECF No. 105).  The plaintiffs' claims all relate to events in late 2011 and early 2012, during which time plaintiff Tina Grace ("Grace") was investigated, criminally charged, and terminated from her employment as a special education teacher based on allegations that she had abused children in the class in which she taught.  The criminal charges against Grace were dropped as part of a deferred prosecution agreement and ultimately expunged.  The following discussion focuses on the facts relevant to the plaintiffs' claims against the movant defendants, Jay Lockard and the Mingo County Board of

---

[1] The court's previous order dismissed claims against defendants C. Michael Sparks, Michael Thornsbury, the West Virginia Supreme Court of Appeals, and Steven D. Canterbury.

Education (hereinafter "the Board" or "BOE").

On September 23, 2011, a physical therapist working at Riverside Elementary met with A.J. Parker, the Director of Special Education in Mingo County, to report several incidents of alleged child abuse by Grace, including slapping a student on the bare buttocks and withholding lunch from a student.  Parker reported the allegations to Randy Keathley, Superintendent of Mingo County Schools, and the West Virginia Department of Health and Human Resources ("DHHR").  Over the next several days, Parker conducted an investigation into the abuse allegations. (See BOE Ex. A, ECF No. 128-1 at 1).  The investigation revealed details about prior incidents involving Grace's conduct in disciplining students.  These earlier incidents included using hot sauce to discipline a child and using a device known as the "Turtle Stander" as an inappropriate form of punishment.

Grace was suspended with pay from her teaching position on September 26, 2011, pending the completion of DHHR's investigation into the allegations against her.  She was notified of the suspension by a letter from Superintendent Keathley, which informed her of the investigation process and her right to be heard by the Board before action was taken on

any further recommendations made by Keathley. (BOE Ex. B, ECF No. 128-1 at 9).

On December 5, 2011, DHHR issued the report of its investigation into the allegations of abuse by Grace. (BOE Ex. D, ECF No. 128-1 at 14). After extensive discussion of the investigation, witness statements, and related documentation, the report concluded: "A. Finding(s): Child Abuse has occurred." Id. at 28. After DHHR and the Board completed their investigations, Grace was invited, through her counsel, to attend a meeting with Superintendent Keathley to discuss the findings. After that meeting, Keathley recommended that Grace's employment with the Mingo County Schools be terminated. A pre-disciplinary hearing was held on January 6, 2012. At the hearing, Grace testified on her own behalf and admitted several of the incidents underlying the DHHR's findings had occurred. (BOE Ex. G, ECF No. 128-2, 128-3 & 128-4). On February 23, 2012, the hearing officer issued her recommended decision, finding that the Board had met its burden to demonstrate Grace was "guilty of child abuse and other misconduct, amounting to cruelty, immorality and insubordination under W. Va. Code § 18A-2-8." (BOE Ex. H, ECF No. 128-5 at 12). On March 19, 2012, Keathley sent a letter to Grace informing her that the Board had

4

ratified her suspension and adopted the recommendation to terminate her employment.  (BOE Ex. I, ECF No. 128-5 at 15). Following her termination, Grace exercised her right to file a Level Three grievance appealing the Board's decision.  A hearing on her grievance was scheduled for August 22, 2012.

During the Mingo County Grand Jury's April 2012 term, county prosecutor Michael C. Sparks presented battery and child abuse complaints against Grace to the grand jury.  The grand jury indicted Grace on a misdemeanor count of battery and two felony counts of child abuse.  Defendant Jay Lockard served as the foreman of the grand jury that indicted Grace.  At all relevant times, Lockard has also been employed by Mingo County as a Computer Systems Administrator.  The criminal charges against Grace were dropped pursuant to a Pretrial Disposition Agreement between Grace and the prosecutor, and subsequently expunged.  As part of the agreement, Grace agreed to withdraw her grievance challenging the Board's decision to terminate her employment.

Plaintiffs advance two claims against the Board. First, they allege due process and equal protection violations pursuant to 42 U.S.C. § 1983.  Second, they allege that the

Board breached its employment contract with Grace.  The Board
seeks summary judgment based on qualified immunity and the
applicable statute of limitations.  The Board also argues that
because it was under state control at the time of the relevant
events, it cannot be held liable for the plaintiffs' claims.

In their claims against Lockard, plaintiffs allege
that his service on the grand jury violated W. Va. Code § 52-1-
8(d), which disqualifies a prospective juror who is "an
officeholder under the laws of the United States or of this
State" from serving on a jury.  Plaintiffs claim that Lockard's
improper jury service, and potential bias, infringed on Grace's
constitutional rights.  Plaintiffs also allege that Lockard met
in secret with the judge, the county prosecutor, and a county
commissioner to discuss Grace's case prior to its presentation
to the grand jury.  Plaintiffs claim that this meeting violated
Grace's constitutional rights and point to the meeting to
support various state law claims against Lockard.

In his motion for summary judgment, Lockard argues
that plaintiffs' claims fail because as a computer systems
administrator, he is not an "officeholder" and was not
disqualified from serving on a grand jury.  Lockard also argues

6

that plaintiffs have not produced any evidence suggesting that the alleged secret meeting prior to Grace's indictment actually took place.

## II.   Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Anderson, 477 U.S. at 248.  On the other hand, "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Id.

The moving party has the initial burden of showing -- "that is, pointing out to the district court -- that there is an

absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies this burden, then the non-moving party must set forth specific facts, admissible in evidence, that demonstrate the existence of a genuine issue of material fact for trial. See id. at 322-23; Fed. R. Civ. P. 56(c), (e).

When examining the record, the court must neither resolve disputes of material fact nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Along those lines, inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d

820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

### III. <u>Discussion</u>

With the preceding standard in mind, the court addresses the separate motions for summary judgment brought by the Board and by defendant Lockard.

### A.   <u>Claims against the Mingo County Board of Education</u>

The Board is named as a defendant in two counts of the plaintiffs' fifteen-count complaint.  In Count Thirteen, plaintiffs allege the Board breached its contract with Grace when it terminated her employment.  In Count Fourteen, plaintiffs allege constitutional violations under 42 U.S.C. § 1983.

In their response to the Board's summary judgment motion, plaintiffs concede that the § 1983 claim alleged in Count Fourteen is barred by the applicable two-year statute of limitations.  This claim fails as a matter of law because all

9

relevant conduct alleged in the complaint occurred more than two years prior to the filing of the complaint on February 5, 2015. Accordingly, the court will grant summary judgment in favor of the Board on the § 1983 claim.

The Board argues that the plaintiffs' breach of contract claim also fails because the Board is entitled to qualified immunity from suit based on its governmental actions. When a plaintiff brings claims based on governmental acts or omissions which fall within a broad category of "discretionary functions," qualified immunity attaches unless the plaintiff affirmatively demonstrates "that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious or oppressive." West Virginia Regional Jail and Correctional Facility Authority v. A.B., 234 W. Va. 492, 507 (2014) (citing State v. Chase Securities, Inc., 188 W.Va. 356 (1992)).

The West Virginia Supreme Court of Appeals has repeatedly held that "the broad categories of training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions." West

10

<u>Virginia Board of Education v. Marple</u>, 783 S.E.2d 75, 83-84
(2015) (quoting <u>A.B.</u>, 234 W. Va. at 514) (emphasis omitted).
Accordingly, the decision to terminate Grace's employment was a
discretionary function and is shielded by qualified immunity
unless: 1) the Board acted fraudulently, maliciously or
oppressively or 2) the Board's decision violated one of Grace's
clearly-established constitutional or statutory rights.  As
Grace has not argued that the Board acted fraudulently,
maliciously, or oppressively, the application of immunity turns
on whether the Board's actions violated a clearly-established
right.

        To determine whether a clearly-established right has
been violated, the court first identifies the statutory or
constitutional right, if any, which was allegedly violated by
the defendant.  Once a right is identified, the court can
proceed to inquire whether it was clearly established at the
relevant time.  See <u>Maston v. Wagner</u>, 236 W. Va. 488 (2015)
(discussing the "two-part approach" to qualified immunity
questions); <u>cf.</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 242 (2009)
(noting that while it is usually correct to begin by identifying
the right at issue, the order of inquiry can be reversed where
it "will best facilitate the fair and efficient disposition of

[the] case").

Plaintiffs argue Grace's teaching contract constituted valuable property under West Virginia law, and that the Board's "selective generation of vague and non-existent findings of child abuse" deprived Grace of that property in violation of the right to due process guaranteed by the Fourteenth Amendment. (ECF No. 126 at 5).  In particular, they complain that the Board's investigation was improper because 1) several of the alleged abuse incidents involving Grace had been previously investigated with no finding of fault on her part, 2) the Board did not report the allegations of abuse to DHHR during the statutory period required by W. Va. Code § 49-6A-2, 3) Grace never received a pre-termination notice and opportunity to respond to the allegations, and 4) Grace was never questioned by Parker, Director of Special Education, during his investigation on behalf of the Board.

The Supreme Court has recognized a property interest in continued public employment in some contexts.  See e.g., Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). In Loudermill, the Court held that to satisfy due process, a public employee "is entitled to oral or written notice of the

charges against him [or her], an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story."  Id. at 546.  This list is an "exhaustive" description of the process due before dismissal.  Curtis v. Montgomery County Public Schools, 242 Fed. Appx. 109, 111 (4th Cir. 2007) (unpublished).

        The court assumes for these purposes that Grace had a protected property interest in her employment as a special education teacher.  However, none of the plaintiffs' complaints with the manner in which the Board handled its investigation and termination of Grace's employment are sufficient to support a due process claim.  Plaintiffs allege that some of the behavior based on which Grace was fired had been previously investigated, but they do not explain how the existence of these prior investigations rendered the later investigation unreasonable in light of the fact that a new report had been made raising questions about Grace's actions.

        Similarly, plaintiffs do not explain how the failure of county officials to timely notify DHHR of abuse allegations as required by state statute could have affected Grace's constitutional rights.  Plaintiffs argue only that the failure

to timely report any suspected abuse "goes to the weight of the evidence" and means that "[no abuse] ever occurred." (ECF No. 126 at 6). With respect to the adequacy of pre-termination notice, plaintiffs do not point to any particular deficiency with the letters Grace received informing her of the basis for her suspension or of her rights during the investigation process. Grace was represented by counsel during the time of her suspension and at the pre-termination hearing at which she had the opportunity to contest the allegations against her. While plaintiffs complain that Parker never interviewed Grace as part of his internal investigation, they overlook the fact that Grace was interviewed as part of the DHHR investigation and testified on her own behalf at the hearing. Given all of these facts, there is no genuine issue of material fact as to whether Grace received notice and a hearing prior to her termination, assuming such was the process due her.

In actuality, most of plaintiffs' objections to the process Grace received prior to termination appear to be belated challenges to the substantive finding of the DHHR report and the hearing officer that Grace abused her students. To the extent a dispute about whether abuse occurred is material to her due process rights, plaintiffs have completely failed to support

14

their position with competent evidence.  At summary judgment,
plaintiffs may not rely on the bare allegations of their
complaint and briefs, in which they repeatedly suggest that
improper motives on the part of school officials, rather than
any actual abuse, led to Grace's termination.  The Board has
produced evidence in the form of the DHHR investigation and the
transcript of Grace's pre-termination hearing, both of which
provide a reasonable basis for Grace's termination based on the
abusive conduct discussed therein.  While plaintiffs may
disagree with the conclusion that Grace's actions constituted
child abuse, their burden at this stage was to properly support
their position that Grace was deprived of due process, as
required by Rule 56.

        Because Grace received the notice, hearing, and
opportunity to be heard guaranteed by due process, there is no
genuine issue of material fact in dispute as to whether her
constitutional rights were violated.  As a result, the Board is
entitled to qualified immunity with respect to the plaintiffs'
breach of contract claim based on Grace's termination.[2]

_____

[2] Because the court concludes the Board is immune from suit, it
need not reach the Board's additional argument that due to state
control of the county education system during the relevant
period, the Board is not liable for employment decisions such as

15

B.   Claims against Jay Lockard

While the plaintiffs have pled a number of claims against Lockard, including a § 1983 claim and state tort claims, they admit that all of their claims are premised on two factual allegations.  First, plaintiffs claim that Lockard's service on the grand jury that indicted Grace was prohibited by statute and therefore "deprived Tina Grace of her constitutional rights and amounted to the other actionable conduct the plaintiffs have alleged against him."  Pls.' Resp. in Opp. (ECF No. 125 at 4).  Second, they allege that Lockard met in secret with the county prosecutor, circuit judge, and a county commissioner prior to the grand jury's consideration of the indictment.  Plaintiffs argue that this meeting undermined the secrecy of the grand jury proceedings and violated Grace's rights.

West Virginia Code § 52-1-8(d) disqualifies from jury service a prospective juror who is an "officeholder" under the laws of the United States or of West Virginia.  As a computer systems administrator, Lockard is an employee of the county but is not an officeholder subject to disqualification for jury

---

Grace's termination.

16

service.  The West Virginia Supreme Court of Appeals has
described the test to determine whether an individual is an
officer or a mere employee as follows:

> [A]s a general rule it may be stated that a position is
> a public office when it is created by law, with duties
> cast on the incumbent which involve an exercise of some
> portion of the sovereign power and in the performance of
> which the public is concerned, and which are continuing
> in their nature and not occasional or intermittent. But
> one who merely performs the duties required of him by
> persons employing him under an express or implied
> contract, though such persons themselves be public
> officers, and though the employment be in or about public
> work or business, is a mere employee.

State ex rel West Virginia Citizens Action Group v. West

Virginia Economic Development Grant Committee, 213 W. Va. 255,

268 (2003) (quoting State ex rel. Key v. Bond, 94 W. Va. 255,

261 (1923)) (emphasis omitted).

There has been no suggestion that Lockard's position
as a computer systems administrator was created by law, or that
he exercised in that position any degree of sovereign power.
Nor was any bond or oath required of Lockard as a condition of
his employment, both of which are factors courts consider in
evaluating whether a position is a public office.  Id.  For

17

these reasons, it is clear that Lockard was a public employee
but not an officer of the state.[3]

Because Lockard was not disqualified from serving on
the grand jury, the only remaining question relates to the
alleged secret meeting between Lockard and other individuals
prior to Grace's indictment.  Lockard stated in his affidavit
supporting summary judgment that this meeting did not occur.
(Lockard Ex. A, ECF No. 116 at 2).  David Baisden, the
commissioner allegedly present at the meeting, similarly stated
in a sworn affidavit that no such meeting occurred.  (Lockard
Ex. E, ECF No. 117 at 14).  Grace testified at her deposition
that she believes this meeting took place because she "received
a phone call from [her friend] Hester Keatley stating that there
had -- someone had told her that there had been a meeting
between Mr. Sparks, Mr. Thornsbury, Jay Lockard, David Baisden,

---

[3] In their opposition to summary judgment, plaintiffs suggest for
the first time that even if Lockard is found to be an employee
not an officer, his service was improper because the county had
a practice of appointing employees or officers as jurors which
deprived Grace of her right to a representative jury.
Plaintiffs provide no factual support for this position other
than the allegation that a previous grand jury foreman had been
disqualified as an officeholder.  Without more, the allegation
that a single previous juror was disqualified does not raise a
material issue with respect to Lockard's service meriting any
further discussion.

and Jarrett Fletcher regarding what to do about [Grace's] case."
(Lockard Ex. B, ECF No. 116 at 5).  Keatley, at her own
deposition, explained that she learned about the status of
Grace's case while visiting Baisden's office to inquire about
the status of a criminal case against her son.  (Lockard Ex. C,
ECF No. 117 at 2).  According to Keatley, Baisden told her he
would look into her son's case, left his office, then returned a
few minutes later and told her that both her son and Grace would
be charged with battery.  Id. at 6.  Keatley expressly testified
that Baisden did not tell her whom he asked about these cases,
and in particular she stated that her assumption that Lockard
was present was based only on "rumors."[4]  Id. at 7.

Lockard is entitled to summary judgment as to the
claims based on the alleged secret meeting, because the
plaintiffs cannot support the fact the meeting occurred in any
form involving Lockard that would be admissible as required by
Rule 56.  Plaintiffs argue that Grace herself should be allowed

---

[4] The court notes that while Keatley reported that the
forthcoming indictment would charge Grace with battery, Grace's
indictment included a misdemeanor battery count as well as two
felony counts of child abuse, according to the complaint.  (ECF
No. 1 at 6).  This inconsistency tends to undercut the
plaintiffs' assertion that Keatley was made privy to privileged
grand jury proceedings.

to testify as to what Keatley told her about the meeting,
notwithstanding Keatley's availability and the fact that her
deposition testimony flatly contradicts Grace's account.  Oddly,
plaintiffs seek to do so under the hearsay exception covering
testimony respecting "[a] reputation among a person's associates
or in the community concerning the person's character."  Fed. R.
Evid. 803(21).  However, plaintiffs are seeking to establish the
truth of the testimony regarding the alleged secret meeting, not
the reputation of Lockard or any other person.  Plaintiffs
cannot rely on vague assertions about corruption or past bad
conduct in Mingo County to overcome the basic requirement that
they must support their case with admissible evidence.  Grace's
version of her conversation with Keatley is unquestionably
hearsay.  The only competent evidence before the court
respecting the meeting is Lockard and Baisden's denial that it
ever occurred and Keatley's admission that her story about the
meeting was based on rumor and assumptions on her part.

Based on its review of the record, the court concludes
Lockard is entitled to summary judgment on the claims relating
to the alleged secret meeting.  While the court makes all
reasonable inferences in favor of the non-movants, a reasonable
factfinder could not find in favor of the plaintiffs because no

evidence has been adduced to support their version of events.
See Anderson, 477 U.S. at 248.[5]

IV.   Conclusion

For the foregoing reasons, it is ORDERED as follows:

1.   That the motion for summary judgment filed by the Board
     on January 4, 2016, be, and it hereby is, granted; and

2.   That the motion for summary judgment filed by Lockard on
     January 4, 2016, be, and it hereby is, granted.

The Clerk is directed to transmit copies of this order
to counsel of record and any unrepresented parties.

DATED:    May 4, 2016

John T. Copenhaver, Jr.
United States District Judge

---

[5] Lockard also argues that his actions as a grand juror are
shielded by absolute immunity.  Because the court finds that
there is no admissible evidence supporting the allegation that a
secret meeting between Lockard and others ever occurred, it need
not reach the question of whether a juror would be immune from
suit based on his presence at such a meeting.

21